[Cite as *State v. Watson*, 2014-Ohio-2839.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY


| | |
|---|---|
| State of Ohio | Court of Appeals No. L-13-1089 |
| Appellee | Trial Court No. CR0201202564 |
| v. | |
| Tyler Watson | **DECISION AND JUDGMENT** |
| Appellant | Decided:  June 27, 2014 |

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Brenda J. Majdalani, Assistant Prosecuting Attorney, for appellee.

Lawrence A. Gold, for appellant.

* * * * *

**SINGER, J.**

{¶ 1} Appellant appeals his conviction for murder with a firearm specification entered on a guilty plea pursuant to *Alford v. North Carolina*, 400 U.S. 25, 38, 91 S.Ct. 160, 27 L.Ed.2d 162 (1971).  For the reasons that follow, we affirm.

{¶ 2} On September 8, 2012, at approximately 10:40 p.m., a Lucas County 9-1-1 operator received a cell phone call from an individual who told the operator he had been shot. This was followed on the recording of the call by the sound of a vehicle crashing and a horn going off.

{¶ 3} The call came from a pickup truck that had struck two parked cars before coming to rest. Neighbors pulled the driver, Nicholas Linkey, from the truck, but were not initially aware that he had been shot. When police arrived, they found a bullet hole in Linkey's upper abdomen. Linkey died from internal bleeding en route to a hospital.

{¶ 4} The windows were up and intact in the pickup Linkey was driving. There were no bullet holes in the vehicle. In an effort to determine where and how Linkey was shot, police turned to the locator function of the 9-1-1 system. The beginning source of the call was the intersection of Buckeye and Ontario Streets in Toledo, 950 feet from where the crash occurred.

{¶ 5} Police interviewed the clerk at a carryout located at the corner of Buckeye and Ontario. According to the clerk, earlier that evening a young man came into the store to purchase a cigar. The man told the clerk that he was meeting someone and asked if he could stay in the store out of the cold until the person he was waiting for arrived.

{¶ 6} A short time later a pickup truck drove up and the man got in the passenger side. The clerk reported he then heard what he believed was a shot and saw the man exit the vehicle and run down the street. The truck drove away. The clerk identified the man he saw run from the pickup as appellant, Tyler Watson.

2.

{¶ 7} In a subsequent interview with police, appellant admitted to getting into the truck with Linkey, but claimed the victim was safe when appellant got out after purchasing marijuana. A witness later came forward reporting a conversation with appellant. According to the witness, appellant said that he was taking drugs from Linkey at gunpoint when the victim resisted. In the struggle Linkey was shot. Appellant fled.

{¶ 8} On September 24, 2012, a Lucas County Grand Jury handed down a three count indictment charging appellant with murder, aggravated murder and aggravated robbery, all with a firearm specification. Appellant was subsequently arrested. Counsel was appointed and appellant pled not guilty to all charges.

{¶ 9} The matter proceeded through discovery and several pretrial conferences. At a February 13, 2013 pretrial to set a trial date, appellant addressed the court: "I would be wondering if the court would be willing to give me new counsel. I am not willing to enter a plea to a crime I did not commit." Trial counsel advised the court that this statement was the first she was aware of any complaint. The trial court set an April 8 trial date and denied appellant's request for new appointed counsel.

{¶ 10} At a March 20 pretrial, appellant again raised the issue "because I feel in my heart that my counsel is incompetent to handle this case." Appellant informed the court that his family was seeking to retain counsel. The court reaffirmed the trial date and advised appellant that the court would deal with any retained counsel when retained counsel made an appearance.

3.

{¶ 11} On April 8, with a panel of potential jurors waiting, appellant began to enter a no contest plea to murder with a firearm specification. During the state's recitation of what the evidence would show, however, appellant interrupted, declaring that the prosecutor was lying and stated, "You all about to convict me for a murder I never committed."

{¶ 12} The court, noting that appellant's protestation of innocence was inconsistent with the no contest plea he was about to enter, concluded that the plea agreement did not appear voluntary. Appellant's counsel then told the court that an *Alford* plea had been discussed. After some discussion, an *Alford* plea agreement was prepared which appellant signed. Following a Crim.R. 11 plea colloquy, the trial court accepted appellant's plea and found him guilty of murder with a firearm specification. The court then sentenced appellant to a statutorily required term of 15 years to life to be served subsequent to a mandatory three year term of incarceration for the firearm specification.

{¶ 13} From this judgment of conviction, appellant now appeals. Appellant sets forth two assignments of error:

> I. The trial court erred in accepting Appellant's guilty plea pursuant to North Carolina v. Alford when said plea was not offered voluntarily in violation of Appellant's right to Due Process under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

II. Appellant received ineffective assistance of counsel in violation of his rights under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, § 10 of the Constitution of the State of Ohio.

{¶ 14} We shall discuss appellant's assignments of error together.

{¶ 15} An *Alford* plea is one in which a defendant pleads guilty to an offense, with a qualification of innocence. The purpose of entering an *Alford* plea "is to avoid the risk of a longer sentence by agreeing to plead guilty to a lesser offense or for fear of the consequences of a jury trial, or both." *State v. Bailey*, 1st Dist. Hamilton No. C-030916, 2004-Ohio-6427, ¶ 7.

{¶ 16} "[A]n Alford plea is simply a species of a guilty plea." *State v. Bryant*, 6th Dist. Lucas No. L-03-1359, 2005-Ohio-3352, ¶ 23. When a defendant enters a guilty plea, the defendant waives all appealable errors which occurred prior to the plea, unless such errors precluded the defendant from entering a knowing and voluntary plea. A guilty plea waives even the right to claim that the defendant was prejudiced by ineffective assistance of counsel, except to the extent that the defects complained of caused the plea to be less than knowing and voluntary. *State v. Moon*, 6th Dist. Lucas No. L-13-1060, 2013-Ohio-5472, ¶ 12.

{¶ 17} As with all guilty pleas, to be properly accepted, the court must be satisfied that the plea is voluntarily and intelligently offered. *State v. Darks*, 10th Dist. Franklin No. 05AP-982, 2006-Ohio-3144, ¶ 9, Crim.R. 11(C). "The standard for determining the

5.

validity of an *Alford* plea is the same as a regular plea: whether the plea represents a voluntary and intelligent choice among the alternative courses of action available to a defendant." *Id.* at ¶ 14. "[W]here the record affirmatively discloses that: (1) a guilty plea was not the result of coercion, deception or intimidation; (2) counsel was present at the time of the plea; (3) his [or her] advice was competent in light of the circumstances surrounding the plea; (4) the plea was made with the understanding of the nature of the charges; and (5) the plea was motivated either by a desire to seek a lesser penalty or a fear of the consequences of a jury trial, or both, the guilty plea has been voluntarily and intelligently made." *State v. Piacella*, 27 Ohio St.2d 92, 96, 271 N.E.2d 852 (1971).

{¶ 18} Appellant concedes that his Crim.R. 11 colloquy was proper, but asserts that nonetheless his plea was not voluntarily and intelligently entered because the trial court did not allow him to "fire and replace" his appointed counsel.

{¶ 19} We note that the trial court did not prohibit appellant from replacing his counsel, it simply ruled that it would not replace his court appointed counsel. While the Sixth Amendment guarantees an indigent criminal defendant a right to competent counsel, the right to have the counsel of one's choice does not extend to appointed counsel. *See Wheat v. United States*, 486 U.S. 153, 159, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988). Courts have "wide latitude in balancing the right to counsel of choice against the needs of fairness and against the demands of its calendar." *State v. Frazier*, 8th Dist. Cuyahoga No. 97178, 2012-Ohio-1198, ¶ 26, quoting *United States v. Gonzalez-Lopez*, 548 U.S. 140, 152, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006). Decisions relating to

6.

substitution of counsel are within the sound discretion of the court and may not be disturbed absent an abuse of discretion. *Id.* at ¶ 26. An abuse of discretion is more than a mistake of law or an error in judgment, the term connotes that the court's attitude is arbitrary, unreasonable or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

{¶ 20} Given the stage of the proceedings and the inexactitude of appellant's reason for substitution of counsel, we conclude that the trial court acted within its discretion in denying appellant's request to change counsel. More importantly, we fail to discern any relationship between the denial of counsel substitution and appellant's voluntary and intelligent entry of the *Alford* plea.

{¶ 21} Appellant conceded that his Crim.R. 11 plea colloquy was properly conducted. There is nothing in the record to suggest that the plea was the result of any coercion, deception or intimidation. Counsel was present during the plea. There is nothing in the record, save appellant's unspecified belief that his counsel was incompetent, to suggest that counsel provided improper advice to appellant. The record makes clear that appellant understood the nature of the charges against him. Appellant himself expressly stated that he was entering the plea because of a desire to seek a lesser penalty or a fear of the consequences of a jury trial, or both. In these circumstances, we can only conclude that appellant's plea was knowingly and intelligently entered. Accordingly, appellant's first assignment of error is not well-taken.

{¶ 22} With respect to ineffective assistance of counsel, there is nothing in the record to suggest that counsel's performance was deficient in any way or that appellant was unfairly prejudiced by any act of counsel. *See Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Accordingly, appellant's second assignment of error is not well-taken.

{¶ 23} On consideration, the judgment of the Lucas County Court of Common Pleas is affirmed. It is ordered that appellant pay the court costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.　　　　　　 _____
　　　　　　　　　　　　　　　　　　　　　　　　JUDGE
Arlene Singer, J.　　　　　　　　　　

Thomas J. Osowik, J.　　　　　　 _____
CONCUR.　　　　　　　　　　　　　　　　　JUDGE

　　　　　　　　　　　　　　　　　　 _____
　　　　　　　　　　　　　　　　　　　　　　　　JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.